**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2076
_____

UNITED STATES OF AMERICA

v.

JARON DAVIS,
              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-19-cr-00268-002)
District Judge: Honorable William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 12, 2024

Before: BIBAS, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed: August 28, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Jaron Davis was charged with multiple counts of robbery and firearm offenses. The District Court denied his motion to suppress evidence that was discovered during a protective sweep of his vehicle, and Davis pleaded guilty to the offenses. He now appeals, arguing that the District Court erred in its suppression ruling. Because law enforcement had reasonable suspicion that the vehicle's occupants might be armed and dangerous, we will affirm the District Court's judgment.

**I**

**A**

Between December 14 and December 18, 2018, several individuals robbed six businesses in Pittsburgh, Pennsylvania. Police connected a white Nissan Rogue (license plate HIM-5269) to three of the robberies. An individual wearing a puffy blue jacket participated in all six robberies, and on each occasion the perpetrators either brandished firearms or were believed to be armed.

On December 19, Monroeville Police Detective Robert Renk posted a bulletin on the regional police network about the robberies. He noted that "at least one firearm" was used in the crimes and that "a white, Nissan Rogue, Ohio # HIM-5269" was "POSSIBLY (probably)" involved. Suppl. App. 4. He stated, "We DO NOT have [probable cause] to stop the vehicle for suspected involvement in the robberies! There are no arrest warrants nor have any Actors been identified." *Id.* Finally, he wrote that if any officers were to see the vehicle "and observe a traffic violation[,] a traffic stop and ID of the occupants

2

would be appreciated. USE Caution they may be armed." *Id.* The bulletin attached surveillance photographs of the Rogue and the robbery suspects.

Later that evening, a license-plate reader system reported that the Rogue was in Pittsburgh's Oakland neighborhood. The Monroeville police notified Pittsburgh Police Detective Kevin Williams that Renk would be in the area to look for the Rogue. They described the Rogue to Williams, provided its license plate number, and said the vehicle was involved in armed robberies. A few minutes later, Williams issued a "be on the lookout" (BOLO) alert over the radio explaining that the Rogue was wanted in connection with several armed robberies. Renk heard the BOLO and immediately asked the communications team to recall it because he had merely wanted to locate and surveil the vehicle.

Before the BOLO could be recalled, Pittsburgh Police Sergeant Brian Marckisotto—who had seen Renk's regional bulletin earlier that day and heard the BOLO—observed a white Nissan Rogue traveling between 60-65 miles per hour in a 35 mile per hour zone. Marckisotto pursued the Rogue but did not activate his lights or siren because there was no place for the Rogue to safely pull over. When the Rogue pulled into a gas station, Marckisotto activated his lights, ordered the occupants to remain in the car, and confirmed that the Rogue was the subject of the BOLO. Because the BOLO connected the vehicle to armed robberies, Marckisotto waited for backup to arrive before approaching. While waiting, he observed two of the occupants "leaning forward, digging under the seat, [and] going back and forth in . . . a jittery manner." A373.

Before backup arrived, Marckisotto learned that the dispatch was only intended to request a lookout and alert. Nonetheless, based on the occupants' movements and the BOLO, Marckisotto suspected that the occupants might be armed. Therefore, once more officers arrived on the scene, he detained the vehicle's occupants (including Davis, the driver). Officers then conducted a protective sweep of the vehicle and saw a blue puffy jacket in the trunk and a firearm in the back seat. Police obtained a search warrant for the Rogue and then recovered clothing worn by the robbery perpetrators, a firearm, and items stolen during the most recent robbery.

B

Davis moved to suppress the seized evidence, arguing that the vehicle stop was unlawful and his detention was not supported by probable cause. After a hearing, the District Court denied the motion. It held that the stop was lawful and that officers had reasonable suspicion to remove the occupants because, among other things, two occupants made movements consistent with the concealment of a weapon, the bulletin message suggested that the occupants could be armed, and the BOLO connected the vehicle to multiple armed robberies. The Court also concluded that the officers had reasonable suspicion to conduct the protective sweep. Finally, it noted that even if the search had been unlawful, the good faith exception to the exclusionary rule would apply.

Davis entered a conditional guilty plea to eleven counts and waived all appellate rights except for his ability to challenge the denial of his suppression motion. The Court

4

imposed a sentence of 180 months' imprisonment to be followed by three years of supervised release. Davis timely appealed the denial of his suppression motion.

## II[1]

In reviewing the denial of a motion to suppress, we exercise plenary review over a district court's reasonable suspicion determination but review its factual findings for clear error. *United States v. Whitfield*, 634 F.3d 741, 743–44 (3d Cir. 2010). When the district court denies the motion, we view the facts in the light most favorable to the government. *United States v. Stewart*, 92 F.4th 461, 466 (3d Cir. 2024).

On appeal, Davis no longer challenges the legality of the vehicle stop. Rather, he argues that Marckisotto lacked reasonable suspicion that the Rogue's occupants were armed and dangerous, making it unlawful for him to order the Rogue's occupants out of the car and conduct a protective sweep. We disagree.

During a lawful traffic stop, an officer may frisk the occupants or sweep the vehicle only if he or she has "a reasonable suspicion that the occupants might be armed and dangerous." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)); *United States v. Johnson*, 592 F.3d 442, 448–49 (3d Cir. 2010). Reasonable suspicion "can be based on information gathered from another person," *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir.

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

2002), provided that the original source of information had reasonable suspicion, *see United States v. Brown*, 448 F.3d 239, 248 (3d Cir. 2006).

Here, because Marckisotto saw Renk's regional bulletin and heard Williams's BOLO, he was permitted to rely on both in forming his reasonable suspicion as long as both Renk and Williams had reasonable suspicion in the first instance.

Renk received reports that a white Nissan Rogue with the license plate HIM-5269 was involved in several armed robberies in the Pittsburgh area and that the robbers had at least one firearm. This provided him with reasonable suspicion that the Rogue's occupants might be armed and dangerous. That Renk disclaimed *probable cause* to stop the vehicle for suspected involvement in the robberies does not change this conclusion because reasonable suspicion is a "lower hurdle" than probable cause. *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008).

Because Renk provided the information that led to Williams's BOLO, Renk's knowledge is imputed to Williams under the collective knowledge doctrine. *Whitfield*, 634 F.3d at 745. In turn, Renk's and Williams's knowledge is imputed to Marckisotto, who thus had reasonable suspicion to conduct a frisk and protective sweep of the Rogue and its occupants.

\*     \*     \*

For the foregoing reasons, we will affirm the judgment of conviction.